**In re TRENDING CYCLES FOR COMMODITIES, INC., Debtor.**

**Bankruptcy No. 80–00099–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Feb. 3, 1983.

---

Irving Wolff, John Genovese, Miami, Fla., for trustee.

## ORDER ON TRUSTEE'S OBJECTIONS TO CLAIMS FOR LOST PROFITS AND CALL MARGINS

THOMAS C. BRITTON, Bankruptcy Judge.

About 200 presently unresolved, disputed claims fall either into the category of being claims for monies paid by the customer to the debtor in response to margin calls or claims for profits in addition to the sums paid by the customer to the debtor. The trustee has objected to both categories. The objections were heard on December 14, 1982. That hearing was continued to January 28 because the trustee had failed to give notice to the Commodities Exchange Commission. § 762. (C.P. No. 338).

The trustee's objection to claims for monies paid by the customer to the debtor in response to margin calls is denied. The trustee's objection to claims for paper profits in addition to the sums paid by the customer to the debtor is sustained.

This voluntary chapter 7 case was filed on January 31, 1980 by a commodity pool operator under 11 U.S.C. § 761 et seq. It had been in business for one year, as a leverage transaction merchant for precious metals. The statute provides that "customer property", as that term is defined by § 761(10), shall be ratably distributed to customers on the basis of the "net equity" in their accounts, defined in § 761(17), after the preservation and return of all "specifically identifiable property" held for specific customers. § 766(h). In this pool operation, there is no record of any specifically identifiable property held for any specific customer.

The debtor maintained no ledgers or accounts in any traditional bookkeeping sense. Nor did it maintain original memoranda of transactions from which such a ledger might reasonably be constructed or verified. It had stored certain data in a computer leased from a third party computer service. The trustee obtained a print-out of that data as of the date of bankruptcy.

The document purports to show each customer's active account by name, identifying the specific metal purchases, its quantity, the purchase price, the total payments made by the customer, the "market value" as of the date of the run and the "equity value" of each account resulting from these figures. If this record were complete and accurate it would provide a basis for distribution in accordance with § 766(h). It is not.

Specifically, of the 684 customer claims filed, only 165 agreed with the computer record. The computer had no record of 107 accounts documented by claimants. There is certainly no economically feasible way and there is probably no way to reconcile from the debtor's records the discrepancies which affect most of these accounts. The problem has been aggravated by the Commission's seizure the day before bankruptcy of all the debtor's records. They were dumped in a truck and removed to the Miami F.B.I. office. The F.B.I. and the Commission were persuaded to delay shipment of the records to Chicago for several weeks while the trustee and her accountants examined the records and made copies. Although the Commission has had these records for two years, it has reported for this hearing that:

> "The Commission is without sufficient knowledge of the facts to take a position as to the completeness or accuracy of the books and records of Trending Cycles." (C.P. No. 346.)

The uncontroverted evidence before me is, and I find, that the records of the debtor are not sufficient to substantiate customer claims for profits and to determine the owners of contracts with losses.

Under these circumstances, the Commission has recommended:

> "If the books and records of Trending Cycles are not sufficient to substantiate customer claims for profits and to determine the owners of contracts with losses, this Court should permit distribution based upon an amount equal to the total out-of-pocket deposit made by a customer minus withdrawals with respect to such contracts." (C.P. No. 346.)

This recommendation would base distribution in this case upon the theory of rescission or restitution. I agree. It follows, therefore, that both paper profits and paper losses that might have been reflected in each customer's account on the date of bankruptcy (had such accounts been accurately maintained) must be disregarded. It also follows that both the customer's original margin deposit and any subsequent deposit made in response to a margin call (minus withdrawals) must be the sole basis for distribution.

The trustee and her accountant have been instructed to prepare and submit before March 1, an order for distribution consistent with the foregoing ruling (and incorporating an earlier order on claims). All remaining objections to claims (about 60) have been noticed for hearing during this month. They too will be incorporated in that order so that a final distribution to customers of all "customer property" (about $951,165 including accrued interest) can be made without further delay and without any deduction for administrative expense.

The trustee has been further instructed to proceed simultaneously without delay to complete the administration of the debtor's other assets and to settle the non-customer claims.